# Exhibit A

(Plan of Reorganization)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

**CONNELL FOLEY LLP**

Stephen V. Falanga (SF-6414)
Philip W. Allogramento III (PA-7796)
85 Livingston Avenue
Roseland, NJ 07068
Tel: (973) 535-0500
Fax: (973) 535-9217

*Proposed Counsel to Debtor and Debtor in
Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| G&S LIVINGSTON REALTY, INC., | Bankr. Case No.: 11- |
| Debtor. | |

## PREPACKAGED PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: July 1, 2011

i

# TABLE OF CONTENTS

**Page**

I.       INTRODUCTION ................................................................................................1

II.      DEFINITIONS ...................................................................................................2

III.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..................14
         A.     Unclassified Claims ...............................................................................14
                1.     Administrative Expenses and Fees ...............................................14
                2.     Priority Tax Claims .....................................................................15
                3.     Priority Non-Tax Claims .............................................................15
         B.     Classified Claims and Interests ...............................................................16
                1.     Class 1 -- Secured Claim of Essex Ten .......................................16
                2.     Class 2 -- Unaffiliated Unsecured Claims ...................................16
                3.     Class 3 -- Affiliated Unsecured Claims .......................................17
                4.     Class 4 -- Equity Interest Holders ..............................................17
         C.     Acceptance or Rejection of Plan ..............................................................17
         D.     Means of Effectuating the Plan ...............................................................18
                1.     Effectuating the Plan ...................................................................18
                2.     Post-Confirmation Management ...................................................19
                3.     Disbursing Agents........................................................................20
                4.     Mechanism for Distributions to General Unsecured Claims ........20
                5.     Disputed Claims Reserve .............................................................20
                6.     Exemption from Certain Transfer Taxes ......................................21
                7.     CVS Litigation ...........................................................................21

IV.      TREATMENT OF CONTRACTS/LEASES, CLAIM OBJECTIONS, THE
         EFFECTIVE DATE AND DISTRIBUTIONS...................................................22
         A.     Executory Contracts and Unexpired Leases ..............................................22
                1.     Assumptions ...............................................................................22
                2.     Rejections ...................................................................................23
         B.     Retention of Jurisdiction .........................................................................24
         C.     Procedures for Resolving Contested Claims ..............................................26
         D.     Notices under the Plan ............................................................................27
         E.     Conditions Precedent to the Effective Date ...............................................27
         F.     Effect of Failure of Condition .................................................................28
         G.     Waiver of Conditions to the Effective Date ...............................................28
         H.     Distributions..........................................................................................29
                1.     Rounding of Distributions ...........................................................29
                2.     Undeliverable Distributions .........................................................29

V.       EFFECT OF CONFIRMATION OF PLAN ..........................................................30
         A.     Discharge ...............................................................................................30
         B.     Term of Bankruptcy Injunction or Stays ...................................................31
         C.     Exculpation ............................................................................................31

2524356-08

| | D. | Revesting of Property in the Debtor | 32 |
| | E. | Modification of Plan | 32 |
| | F. | Post-Confirmation Quarterly Fees | 32 |
| VI. | | MISCELLANEOUS PROVISIONS | 32 |
| | A. | Settlement of Claims and Controversies | 33 |
| | B. | Extensions of Time | 33 |
| | C. | Closing the Case | 33 |
| | D. | Revocation of Plan | 33 |
| | E. | Successors and Assigns | 34 |
| | F. | Reservation of Rights | 34 |
| | G. | Severability | 34 |
| | H. | Conflicts | 34 |
| | I. | Entire Agreement | 35 |
| | J. | Governing Law | 35 |
| | K. | Rules of Interpretation | 35 |
| | L. | Setoff and Recoupment Rights Preserved | 36 |

## TABLE OF EXHIBITS

EXHIBIT A -- RESTRUCTURING SUPPORT AGREEMENT

# I.

# <u>INTRODUCTION</u>

G&S Livingston Realty, Inc., a New Jersey corporation and the anticipated debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Debtor" or the "Plan Proponent"), proposes the following Prepackaged Plan of Reorganization (together with its exhibits and as amended from time to time the "Plan") pursuant to Section 1121 of the United States Bankruptcy Code (the "Bankruptcy Code" or "Code").  The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.  All capitalized terms not defined in this Introduction have the meanings ascribed to them in Section II of this Plan, in other sections of the Plan or in the Bankruptcy Code.

Transmitted with this Plan is a copy of the Disclosure Statement required by Section 1125 of the Bankruptcy Code (together with exhibits and as amended from time to time, the "Disclosure Statement"), and which is provided to help you understand this Plan.  Reference is made to the Disclosure Statement for a discussion of the Debtor's structure, history, business, assets and a summary and analysis of the Plan and related matters.  The Disclosure Statement has not yet been approved by the Court.

This Plan constitutes a reorganizing plan.  The Debtor, in accordance with the terms of the RSA, anticipates accomplishing payments under the Plan by entering into a series of transactions among the Debtor, KABR and their related entities that will result in the full payment of the Debtor's allowed unsecured claims to unaffiliated creditors and allow the Debtor to become the part owner of Daven Avenue, an entity which will own the Livingston Property free and clear of the Existing Loan obligations.  On the Effective Date of this Plan, the Debtor will transfer assets, including the Livingston Property and cash contributed by the Equity Interest

1

Holders to Daven Avenue in return for an ownership interest in Daven Avenue.  At the same time, the Debtor will utilize cash and cash to be paid by Daven Avenue to satisfy Claims of its unsecured creditors.  Following consummation of the Plan, the Debtor and KABR will be the owners of Daven Avenue, which will be the direct owner of the Livingston Property free of the Existing Loan and infused with new capital that will position Daven Avenue to renovate and transform the Livingston Property to attract a new tenant mix and contribute to a revitalization of the Route 10 commercial corridor in the Livingston area.

THE PLAN PROPONANT URGES ALL CREDITORS AND OTHER PARTIES IN INTEREST TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES, EXHIBITS OR LETTERS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.

## II.

## DEFINITIONS

**Scope of Definitions.**  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan.  In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.  **Administrative Expense** means any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code,

including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code.

2.    **Affiliated General Unsecured Claim** means those pre-petition general unsecured claims against the Debtor that are not G&S Livingston Liabilities or Other Liabilities and are due to creditors who are affiliated with the Debtor. Specifically, the Affiliated General Unsecured Claims are held by Farmingdale Maintenance Service, Inc., G&S Investors, Inc., Jersey City Associates, Inc. and Willow Park Enterprises, Inc.

3.    **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", means any Claim against, or Equity Interests of, the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been Allowed in

3

whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

4.  **Allowed Administrative Expense** means any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

5.  **Allowed General Unsecured Claim** means an Affiliated General Unsecured Claim or a General Unsecured Claim that is or has become an Allowed Claim.

6.  **Assumed Contracts** means the unexpired leases and executory contracts identified on section IV.A.1 of this plan.

7.  **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

8.  **Bankruptcy Court** means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

9.  **Bankruptcy Rules** means the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

10. **Business Day** means and refers to any day except Saturday, Sunday, and any other days on which commercial banks in New Jersey are authorized by law to close.

2524356-08

11.     **Chapter 11 Case** means the above-captioned bankruptcy case under chapter 11 of the Bankruptcy Code in which G&S Livingston Realty, Inc. is the Debtor.

12.     **Chapter 11 Professionals** means the professionals retained in this Chapter 11 Case.

13.     **Claim** means any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code.

14.     **Class** means a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

15.     **Code** means Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

16.     **Confirmation** means the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

17.     **Confirmation Date** means the date of entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

18.     **Confirmation Hearing** means a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

2524356-08

19.    **Confirmation Order** means an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

20.    **Creditor** means any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

21.    **CVS** means CVS Pharmacy, Inc. and the current guarantor under the Guaranty.

22.    **CVS Claim** means the claims asserted by the Debtor in the CVS Litigation to enforce the Debtors rights under the Guaranty.

23.    **CVS Litigation** means the action commenced by the Debtor against CVS that is presently pending in the District Court of New Jersey, Civil Action No.: 10-303 (SDW/MCA).

24.    **Daven Avenue** means and refers to Daven Avenue, LLC, a Delaware limited liability company to be formed by the Debtor prior to the Confirmation Date.

25.    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

26.    **Debtor** means and refers to G&S Livingston Realty, Inc.

27.    **Debtor Contribution Amount** means an amount of cash equal to (i) fifty percent of the G&S Livingston Liabilities, plus (ii) $500,000.

28.    **Deficiency Claim** means any portion of a Secured Claim in excess of the value of all the collateral securing such Secured Claim, provided, however, that pursuant

6

to this Plan, the Holders of Secured Claims in Class 1, is deemed to have waived its Deficiency Claim, if any.

29. **Disbursement Account** means an account to be established by the Disbursing Agent prior to the Effective Date to be used for purposes of making distributions and payments required to be made on the Effective Date.

30. **Disbursing Agent** means the Reorganized Debtor, or any other party that may be appointed by the Court, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims pursuant to the provisions of the Plan and Confirmation Order.

31. **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 *et seq.* of the Bankruptcy Code.

32. **Disputed Claim** means any Claim which is either marked disputed on the Debtor's Schedules and/or any Claim as to which any party has interposed a timely objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order.

33. **Disputed Claims Estimated Amount** means the aggregate amount estimated to become an Allowed Claim of all Disputed Claims as estimated by the Bankruptcy Court for distribution purposes.

34. **Effective Date** means the day on which the all of the conditions precedent set forth in Section III of the Plan have been satisfied or waived..

35. **Equity Interest Holder** means each of Gregg Wasser, Laurence Taub and Dr. Harris Wasser, as the Holders of Equity Interests in the Debtor.

36.   **Equity Interest** means any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

37.   **Essex Ten** means Essex Ten Financial, LLC, a New Jersey limited liability company that is wholly owned by KABR and is the current holder of the Existing Loan.

38.   **Estate** means the estate created upon the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

39.   **Executory Contract** means any executory contract or unexpired lease as of the Petition Date, subject to section 365 of the Bankruptcy Code, between a Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to the Plan or subject to section 1113 of the Bankruptcy Code.

40.   **Existing Liens** means all liens, interests and encumbrances affecting the Livingston Property on the Petition Date.

41.   **Existing Loan** means the promissory note and loan agreement dated July 14, 2005 in the principal amount of $28,125,000.00, plus any accrued interest, penalties and fees, which was initially made between the Debtor and Barclays Capital Real Estate, Inc. and was subsequently securitized and sold to the registered holder of Banc of America Commercial Mortgage, Inc., Commercial Mortgage Pass-Through Series Certificates Series 2005-5.  The Existing Loan is secured by the Livingston Property and the Debtor's Personal Property according to the terms of a Mortgage, Assignment of Rents and leases, Security Agreement

and Fixture Filing dated as of July 14, 2005.  Prior to the Petition Date, the Existing Loan was purchased by Essex Ten.

42. **Face Amount** unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Plan, (i) the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim unless the Disputed Claim has been estimated for distribution purposes or, in the alternative, if no proof of Claim has been timely Filed or deemed Filed, zero, and (ii) the Face Amount of an Allowed Claim means the liquidated amount set forth on the proof of Claim, unless an objection has been filed to the allowance of the Claim, in which case the Face Amount shall be the amount set forth in any Final Order allowing the Claim.

43. **Final Order** means an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

44. **G&S Livingston Liabilities** means the unpaid general unsecured liabilities listed on Exhibit B of the Operating Agreement of Daven Avenue and all other unpaid liabilities that have been accrued by the Debtor from October 26, 2010 to the date of Confirmation of this Plan.

45. **General Unsecured Claims** means the G&S Livingston Liabilities and the Other Liabilities.

2524356-08

46. **Guaranty** means the Guaranty by Melville Corporation of Lease dated June 21, 1996, between G&S Livingston Realty, Inc., Landlord, and Livingston Linens 'N Things, Inc., Tenant.

47. **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", means that the Plan alters the legal, equitable, or contractual rights of the member of that class.

48. **Joseph Lobuono** means the individual person residing at 2 North Street Waldwick, New Jersey who is intended to be a signatory to the Operating Agreement and is anticipated to receive certain distributions from Daven Avenue for his advice and consulting services in connection with the RSA upon the successful completion of the transactions contemplated by this Plan.

49. **KABR** means KABR Real Estate Investment Partners, LLC, a Delaware limited liability company.

50. **KABR Contribution Amount** means an amount of cash equal to (i) fifty percent of the sum of the G&S Livingston Liabilities, plus (ii) $500,000.00.

51. **Livingston Property** means all of the land, fixtures and improvement of the Daven Avenue Shopping Center Located along the Route 10 in Livingston, New Jersey.

52. **Operating Agreement** means the proposed Amended and Restated Operating Agreement of Daven Avenue, LLC substantially in the form set forth as Exhibit B to the RSA that will be executed in connection with the Plan on or prior to the Effective Date.

53. **Other Liabilities** means all General Unsecured Claims due to creditors that (i) accrued prior to of October 26, 2010, (ii) are not Affiliated General Unsecured Claims, and (iii) are not identified on Exhibit B of the Operating Agreement.

54. **Person** means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

55. **Personal Property** means all of the Debtor's rights to property, exclusive of the Livingston Property and any shareholder loan, identified in the Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing that are pledged as security for the Existing Loan.

56. **Petition Date** means the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

57. **Plan** means this Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

58. **Priority Non-Tax Claim** means a Claim entitled to priority under sections 507(a)(2),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

59. **Priority Tax Creditor** means a Creditor holding a Priority Tax Claim.

60. **Priority Tax Claim** means any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

61. **Proceedings** means the Chapter 11 Case of the Debtor.

11

62.     **Professional Person** means and refers to any attorney, accountant, appraiser, consultant, and other professional retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

63.     **Professional Claim** means and refers to administrative expenses owed to any Professional Person for compensation or reimbursement of expenses incurred as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

64.     **Plan Proponent** means the Debtor.

65.     **Rapad Management** means Rapad Management, LLC, a New Jersey limited liability company and affiliate of KABR that will be entitled under the Operating Agreement to a consulting fee from Daven Avenue on a per annum basis of one percent of Daven Avenue's gross revenues.

66.     **Reinstated** or **Reinstatement** means leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the holder of such claim or interest as those rights existed as of the Petition Date.

67.     **Reorganized Debtor** means the Debtor after confirmation of the Plan.

68.     **RSA** means and refers to the Restructuring Support Agreement attached hereto as Exhibit A made and entered into as of the 29th day of October, 2010, by and among, the Debtor and KABR.

69.     **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the

2524356-08

extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

70.     **Tax** means any income, gaming, franchise, excise, sales, use, employment, withholding, property, payroll or other tax, assessments, or governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state or local Governmental Unit on or from the Debtor.

71.     **Unimpaired Claim** means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

72.     **Unrecovered Capital** means the total amount of cash contributed to Daven Avenue and the agreed upon net fair market value amount of any property contributed to Daven Avenue, but not including the Livingston Property or the CVS Claim, less any distributions.

73.     **Unsecured Claim** means any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

74.     **Other Definitions,** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a

13

whole and not to any particular section, subsection, or clause contained in the Plan. Moreover some terms defined herein are defined in the section in which they are used.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTEREST

### A.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. The treatment of these claims is provided below.

### 1.    Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee will also be incurred during the Chapter 11 Case. All administrative expenses will be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

Court Approval of Professional Claims Required: The Court must approve all Professional Claims. Each Professional Person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each Professional Person from

requesting interim compensation during the course of this case pending Confirmation of this Plan.

### 2.    Priority Tax Claims

The Debtor does not believe that there are any holders of Priority Tax Claims.   All requests for payment of Claims by a Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) for Taxes for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no Bar Date has otherwise been previously established, must be Filed on or before the later of: (a) sixty (60) days following the Effective Date; or (b) to the extent applicable, ninety (90) days following the filing of a tax return for such Taxes (if such Taxes are assessed based on a tax return) for such tax year or period with the applicable Governmental Unit. Any holder of a Claim for Taxes that is required to file a request for payment of such Taxes and other amounts due related to such Taxes and which does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Claim against the Debtor, its Estate, or any other entity, or their respective property and shall receive no distribution under the Plan or otherwise on account of such Claim.   Priority Tax Claims that are Allowed will be paid in full on the Effective Date of the Plan or, alternatively, on the Effective Date, the Debtor may agree to pay any Holder of such Allowed Priority Tax Claim the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

### 3.    Priority Non-Tax Claims

Priority Non-Tax Claims are entitled to priority treatment.   The Debtor does not believe that there are any holders of priority non-tax claims.   To the extent that any Priority Non-Tax Claim is Allowed, such claim shall be paid in full on the Effective Date of the Plan.

2524356-08

**B.**      **Classified Claims and Interests**

**Class 1.**          **Secured Claim of Essex Ten**

Class 1 shall consist of the Claims of Essex Ten, as the holder of the Existing Loan, which Claim is hereby deemed an Allowed Claim in the principal amount of $28,125,000, plus all accrued interest, penalties and fees, that were unpaid on the Petition Date, to the extent secured by the Livingston Property and the Personal Property.  Essex Ten's Secured Claim is of a limited recourse nature and Essex Ten shall not have, and by its affirmative vote in favor of the Plan waives, its Deficiency Claim.

Under the Plan and in accordance with the provisions of the RSA, Essex Ten will be merged into Daven Avenue with Daven Avenue surviving, which results in full satisfaction of the Existing Loan through: (y) the retirement of fifteen percent of the Existing Loan in exchange for $1,950,000 contributed by the Debtor and (z) forgiveness of the balance of the Existing Loan in exchange for KABR receiving a forty-seven and a half percent residual equity interest in Daven Avenue with priority on distributions in amounts equal to the sum of KABR's Unrecovered Capital plus an eight percent return on such Unrecovered Capital as determined from time to time.

Essex Ten's Secured Claim is <u>impaired</u> and it is entitled to vote on this Plan.

**Class 2.**          **Class of General Unsecured Claims**

The Allowed General Unsecured Claims are general unsecured claims not entitled to priority under Code Section 507(a), consisting of the G&S Livingston Liabilities and the Other Liabilities.  The Allowed General Unsecured Claims will be paid in full on the Effective Date.

The holders of General Unsecured Claims are <u>not impaired</u> under the Plan and therefore are not entitled to vote.

### Class 3.        Class of Affiliated General Unsecured Claims

The allowed Affiliated General Unsecured Claims are general unsecured claims not entitled to priority under Code Section 507(a) that consist of claims held by entities affiliated with the Debtor that are neither G&S Livingston Liabilities nor Other Liabilities.  Holders of Affiliated General Unsecured Claims shall receive a distribution of cash in an amount equal to two (2%) percent of their respective Affiliated General Unsecured Claims in full satisfaction of such Claims.

The holders of Affiliated General Unsecured Claims are <u>impaired</u> under the Plan and therefore are entitled to vote.

### Class 4.        Class of Equity Interest Holders

The Equity Interest Holders collectively own all of the shares of the stock in the Debtor. Upon the Effective Date of the Plan, the Equity Interest Holders will contribute to the Debtor cash in an amount equal to the sum of: (w) $1,950,000, (x) the Other Liabilities, (y) the Debtor Contribution Amount and (z) two percent (2%) of the total amount owed for the Affiliated General Unsecured Claims.  In return for this contribution, the Equity Interest Holders will retain their respective equity interests in the Debtor.

The Equity Interest Holders are <u>not impaired</u> under the Plan and therefore are not entitled to vote.

### C.        Acceptance or Rejection of Plan

**1.        Unimpaired Creditors** -- Creditors with claims against the Debtor's estate who are not impaired under the Plan are conclusively presumed to have accepted the Plan and are therefore not entitled to vote to accept or reject the Plan.  Creditors in Class 2 (General Unsecured Claims) and Class 4 (Equity Interest Holders) are unimpaired under the Plan and are

2524356-08

conclusively presume to have accepted the Plan pursuant to Section 1126(f) and solicitation of acceptances with respect to Claims in Classes 2 and 4 is not required.

2.    **Impaired Creditors --** Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. Class 1 (Secured Class of Essex Ten) and Class 3 (Affiliated General Unsecured Claims) are impaired under the Plan and are therefore entitled to vote on the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the Allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

**D.    Means of Effectuating the Plan**

1.    **Effectuating the Plan**

The Plan will be effectuated by the Debtor and Daven Avenue entering into a series of transactions with KABR and Essex Ten that have been agreed to under the terms of the RSA, which is incorporated into this Plan by reference. Upon Confirmation, and at the consummation of these transactions, the Debtor's allowed Unaffiliated Unsecured Claims will be paid in full and the Reorganized Debtor will be a part owner of Daven Avenue, which will directly own the Livingston Property free and clear of all Existing Liens. In the event of any conflict between the terms of this Section III (D)(1) of the Plan and the RSA, the terms of the RSA (as the same may be modified from time to time in writing by the Debtor and KABR) attached hereto as Exhibit A shall govern.

Upon Confirmation of the Plan and prior to the Effective Date, the Equity Interest Holders will contribute to the Debtor cash equal to: (i) $1,950,000, (ii) the Other Liabilities, (iii) the Debtor Contribution Amount and (iv) two percent (2%) of the total amount owed for the Affiliated General Unsecured Claims.  On the Effective Date, the Debtor will transfer to Daven Avenue: (x) the CVS Claim, (y) cash equal to $1,950,000, and (z) the Livingston Property, subject to the Existing Loan and the G&S Livingston Liabilities, although not subject to the Other Liabilities.  On the Effective Date, Essex Ten will be merged into Daven Avenue, with Daven Avenue surviving, which results in the full satisfaction of the Existing Loan through: (y) the retirement of fifteen percent of the Existing Loan in exchange for the $1,950,000 contributed by the Debtor and (z) forgiveness of the balance of the Existing Loan in exchange for KABR receiving a forty-seven and a half percent residual equity interest in Daven Avenue and with priority on distributions up to KABR's Unrecovered Capital plus an eight percent return on such Unrecovered Capital as determined from time to time.  After the foregoing merger is effective, the Debtor and KABR will each make contributions equal to the Debtor Contribution Amount and KABR Contribution Amount respectively to Daven Avenue.  In connection with the foregoing merger, the Debtor, KABR and Joseph Lobuono shall enter into the Operating Agreement.  The parties may net the amounts payable by each party against amounts to be paid to each party so as to minimize the number of transfers of cash to be made on the Effective Date

### 2.      Post-Confirmation Management

Confirmation of the Plan will not result in a change of management for the Debtor. Specifically, it is anticipated that the following persons shall hold the following management positions in the Debtor following Confirmation of the Plan:

a.      Gregg Wasser; President, Treasurer and Director.

      b.      Douglas N. Riley;  Director and Secretary.

      c.      Dr. Harris Wasser; Director.

The foregoing persons shall serve in their stated capacities without compensation.

**3.**      **Disbursing Agent**

The Disbursing Agent shall be responsible for making distributions provided for in this Plan and any other required disbursement under the Plan.  The Disbursing Agents shall serve without a bond and shall not receive compensation for services rendered or expenses incurred acting pursuant to the Plan.

**4.**      **Mechanism for Distributions to General Unsecured Claims**

Payments to the Holders of Allowed General Unsecured Claims will be made by the Disbursing Agent on the Effective Date from an account that is funded as follows: (i) KABR will deposit the KABR Contribution Amount and (ii) the Debtor will deposit the Debtor Contribution Amount, an amount equal to the aggregate of Allowed Other Liabilities and an amount equal to two percent (2%) of the total amount owed for the Affiliated General Unsecured Claims.

**5.**      **Disputed Claims Reserve**

On or before the Effective Date, the Debtor shall establish a reserve, which shall be maintained by the Disbursing Agent as part of the Disbursement Account, for all Disputed Claims, if any, in an amount equal to the Face Amount of such Disputed Claim or such other amount as may be determined by a Final Order of the Bankruptcy Court.  With respect to such Disputed Claims, if, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the cash held in reserve therefore shall be distributed by Disbursing Agent to the Holder of the Disputed Claim in a manner consistent with distributions to similarly situated Allowed Claims.  The balance of such Cash, if any, remaining

after any particular Disputed Claims has been resolved and distributions made to the Holder of such Claim in accordance with the Plan, shall be released and transferred to the Reorganized Debtor.  No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or agreement of the parties. Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent such approval is not necessary as provided in this section.  After the Effective Date, and subject to the terms of this Plan, the Reorganized Debtor may settle any Disputed Claim where the result of the settlement or compromise is an Allowed Claim in an amount of $10,000 or less without providing any notice or obtaining an order from the Bankruptcy Court.  All proposed settlements of Disputed Claims where the amount to be settled or compromised exceeds $10,000 shall be subject to the approval of the Bankruptcy Court after notice and an opportunity for a hearing.

**6.      Exemption from Certain Transfer Taxes**

Pursuant to section 1146(a) of Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan, including any documents reflecting the transfer of the Livingston Property, may not be taxed under any law imposing a stamp tax or similar tax.

**7.      CVS Litigation**

The counterclaims asserted by or on behalf of CVS shall not be discharged, released or otherwise affected by Confirmation of this Plan unless CVS files a proof of claim.  If CVS does not file a proof of claim, then the validity and amount of the counterclaim shall be determined by the District Court as part of the CVS Litigation and the amount of any claim or judgment that is determined by a Final Order of the District Court shall be satisfied either by (i) offset against and

deduction from the CVS Claim, or (ii) paid by the Reorganized Debtor in the same manner as if this Plan had not been Confirmed.  If CVS does file a proof of claim, then the Bankruptcy Court shall have jurisdiction to determine the amount, if any, of such Claim; in such event, the Debtor reserves the right to remove the CVS Litigation to the Bankruptcy Court for determination.

**IV.**

**TREATMENT OF CONTRACTS/LEASES, CLAIM OBJECTIONS,
THE EFFECTIVE DATE AND DISTRIBUTIONS**

**A.    Executory Contracts and Unexpired Leases**

**1.    Assumptions**

The following are the Assumed Contracts that will be assumed as obligations of the Reorganized Debtor under this Plan[1]:

    a.    The Restructuring Support Agreement attached hereto as <u>Exhibit A</u>; and

    b.    Rooftop Solar Power Agreement with SRMB LLC (c/o RNK Capital LLC) (the "<u>Solar Power Agreement</u>").

On the Effective Date, each of the Assumed Contracts listed above shall be assumed as obligations of the Reorganized Debtor and the Solar Power Agreement shall be assigned to Daven Avenue together with the Livingston Property.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption and assignment of each Assumed Contract listed above.  Any monetary defaults under each Assumed Contracts to be assumed under this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, in either of the following ways: (a) by payment of the default amount in Cash, in full on the Effective Date; or (b) by payment of the default amount on such other terms as may be agreed to by the Debtor and the non-Debtor parties to such Assumed Contract.  In the event of a dispute regarding

---

[1] The Plan Proponent reserves the right to amend/revise this list of executory contracts and unexpired leases at any time prior to Confirmation of the Plan.

2524356-08

(i) the amount or timing of any cure payments, (ii) the ability of the Debtor to provide adequate assurance of future performance under the Assumed Contract, or (iii) any other matter pertaining to assumption of the Assumed Contract, the Debtor shall pay all required cure amounts promptly following the entry of a Final Order resolving the dispute; provided, however, notwithstanding any other provision of this Plan, (a) with the written agreement of the counterparty to an Assumed Contract or (b) upon written notice to such counterparty, the Debtor may add any Assumed Contract to the list of rejected contracts if the Debtor determines, in its sole discretion, that it is not in its best interests to assume such Executory Contract considering the cure amount or any other terms of assumption as determined by the Bankruptcy Court in a Final Order.  To the extent that any party to an Assumed Contract asserts arrearages or damages pursuant to section 365(b)(1) of the Bankruptcy Code, or has any other objection with respect to any proposed assumption, revestment, cure or assignment on the terms and conditions provided herein, all such objections must be filed and served within the same deadline and in the same manner established for the filing and service of objections to Confirmation of the Plan.  Failure to assert such objections in the manner described above shall constitute consent to the proposed assumption, revestment, cure or assignment on the terms and conditions provided herein, including an acknowledgement that the proposed assumption provides adequate assurance of future performance and that the amount identified for "cure", hereto is the amount necessary to cover any and all outstanding defaults under the Executory Contract to be assumed, as well as an acknowledgement and agreement that no other defaults exist under such contract or lease.

## 2.      Rejections

On the Effective Date, all Executory Contracts not assumed shall be deemed to be rejected.  The order confirming the Plan shall constitute an order approving the rejection of the

Executory Contract. If you are a party to an Executory Contract to be rejected and you object to the rejection of your Executory Contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY (30) DAYS FROM THE EFFECTIVE DATE OF THIS PLAN.**

Any claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.      Retention of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case until the Chapter 11 Case is closed, including jurisdiction to issue any other order necessary to administer the estate and enforce the terms of this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1.      To determine the type, Allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtor or any other party-in-interest entitled to proceed in that manner;

2.      Except as otherwise limited herein, to recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

3.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

4.      To hear any other matter not inconsistent with the Bankruptcy Code;

5.      To enter a final decree closing the Chapter 11 Case;

6.    To ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

7.    To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters involving the Debtor that may be pending on or instituted after the Effective Date;

8.    To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

9.    To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

10.    To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

11.    To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof; and

12.    To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the claims bar date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the

confirmation of the Plan for the purpose of determining whether a Claim is discharged hereunder or for any other purpose.

**C.     Procedures for Resolving Contested Claims.**

**1.     Debtor Objection Deadline.**  The Debtor may file any objection to the allowance of a Claim against the Debtor with the Court and serve the objection on the holder of such Claim at any time before the administration of the Case has been completed and a final decree closing the Case has been entered, unless another date is established by the Court or by amendment to the Plan.  If the Debtor has not filed an objection to a Claim against the Debtor by the deadline established under the Plan, the Claim shall be treated as an Allowed Claim unless it is otherwise a Disputed Claim.

**2.     Prosecution of Objections.**  The Debtor shall, in its sole discretion, litigate to judgment, settle or withdraw objections to Claims against the Debtor without further Court approval.  Rule 9019 of the Bankruptcy Rules does not apply to the settlement or withdrawal of any objection.

**3.     Preservation of Objections.**  Except as otherwise provided in the Plan, the Confirmation Order or other Final Order, no compromise, waiver or release of Claims held by the Debtor that may be provided for in the Plan or in any Final Order shall in any way limit or impair the right of the Debtor to prosecute an objection to a Claim against the Debtor, and the Debtor hereby reserves all rights to object to the allowability of any Claim against the Debtor and reserves all defenses against any such Claim.  Notwithstanding the existence of a colorable objection to any Claim against the Debtor, the Debtor may, in its sole discretion, determine whether an objection to any Claim against the Debtor should be filed and may, in its sole discretion, decline to file or prosecute any objection to any Claim against the Debtor.

2524356-08

4.      **No Distributions Pending Resolution of Objections.**   Notwithstanding any other provision of the Plan, no Distributions shall be made with respect to a Disputed Claim (or any portion of a Disputed Claim if such Claim is not severable) by the Debtor unless and until all objections to such Disputed Claim have been determined by a Final Order.  Distributions made after the Effective Date in respect of Claims that were not Allowed as of the Effective Date (but which later became Allowed) shall be deemed to have been made as of the Effective Date.

**D.      Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Plan Proponent, addressed to:

Stephen V. Falanga, Esq.
Connell Foley LLP
85 Livingston Avenue
Roseland, N.J. 07068
*Proposed Counsel for the Debtor*

**E.      Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived:

1.      the Confirmation Order, authorizing and directing that the Debtor take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan and the transactions contemplated thereby, including, without limitation, the transactions contemplated by the RSA and the Operating Agreement, shall have been entered and become a Final Order;

2.     the statutory fees owing to the United States Trustee shall have been paid in full;

3.     the RSA has been assumed by the Debtor pursuant to the Plan;

4.     all required contributions of cash and property under the RSA have been made;

5.     the transactions required by the RSA have been consummated;

6.     the Operating Agreement has been fully executed by all necessary parties; and

7.     all other actions, authorizations, consents and regulatory approvals required (if any) and necessary to implement the provisions of the Plan and the RSA shall have been obtained, effected or executed in a manner acceptable to the Debtor and KABR.

**F.      Effect of Failure of Condition**

If each condition to the Effective Date has not been satisfied or duly waived by the Debtor within sixty (60) days after the Confirmation Date, then upon motion by any party in interest, including the Plan Proponent, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order will be vacated by the Bankruptcy Court; _provided, however_, that notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponent, as the case may be, before the Bankruptcy Court enters a Final Order granting such motion.  If the Confirmation Order is vacated pursuant to this section, the Plan shall be deemed null and void in all respects.

**G.      Waiver of Conditions to the Effective Date**

The Debtor in its sole discretion may waive any or all of the conditions to the Effective Date, in whole or in part, at any time, without notice or an Order of the Bankruptcy Court.  In

2524356-08

that event, the Debtor will be entitled to render any or all of its performance under the Plan prior

to what otherwise would be the Effective Date if the above-referenced conditions were not

waived, including, but not limited to, the right to perform under any circumstances which would

moot any appeal, review, or other challenge of any kind to the Confirmation Order if the

Confirmation Order is not stayed pending such appeal, review, or other challenge.  The failure to

satisfy or to waive any condition may be asserted by the Debtor regardless of the circumstances

giving rise to failure of such condition to be satisfied (including any action or inaction by the

Debtor).  The failure of the Debtor to exercise any of the foregoing rights will not be deemed a

waiver of any other rights, and each such right will be deemed an ongoing right that may be

asserted at any time.

**H.      Distributions**

**1.      Rounding of Distribution**

Notwithstanding any other provision of the Plan, whenever any payment of a fraction of a

cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to

the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

**2.      Undeliverable Distributions**

Distributions will be delivered to the address of the holder of such Claim as indicated on

the records of the Debtor, or a filed proof of Claim, as applicable.  If any Allowed Claim

holder's distribution is returned as undeliverable, no further distributions shall be made to such

Holder unless and until the Debtor is notified in writing of such holder's then-current address.

Undeliverable distributions shall remain in the possession of the Debtor until such time as a

distribution becomes deliverable.  In an effort to ensure that all holders of Allowed Claims

receive their allocated distributions, the Debtor will file with the Bankruptcy Court a listing of

unclaimed distribution holders.  This list will be maintained and updated as needed for as long as the Chapter 11 Case stays open.  Any holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within three (3) months after the first attempted delivery shall have its Claim for such undeliverable distribution discharged and shall he forever barred from asserting any such Claim against the Debtor, KABR, the Disbursing Agent, or their respective property.  In such cases, any cash held for distribution on account of such Claims shall be property of the Debtor, free of any restrictions thereon, and shall revert to the account from which such payment was originally issued to be distributed pursuant to the Plan.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim.

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

Upon Confirmation of the Plan, the Debtor shall, to the fullest extent allowable under the Bankruptcy Code, be discharged of liability for payment of all Claims of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon, against the Debtor or any of its assets, properties or interests in property incurred before Confirmation.

If Confirmation of this Plan does not occur, the Plan shall be deemed null and void.  In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate.  The provisions of this Plan shall be binding upon Debtor, all Creditors and all Equity

Interest Holders, regardless of whether such Claims or Equity Interest Holders are impaired or whether such parties accept this Plan, upon Confirmation thereof.

**B.      Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order or a separate Order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against the Debtor, are permanently enjoined, on and after the Confirmation Date, from (A) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (B) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Debtor or against the property or interests in property of the Debtor on account of any such Claim, (C) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim and (D) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim.  Such injunction shall extend for the benefit of the any successors of the Debtor, and to any property and interests in property subject to this Plan.

**C.      Exculpation**

To the extent allowed by Section 1125(e) of the Bankruptcy Code, neither the Debtor nor its officers, nor trustees, nor the Disbursing Agent, nor any of the Chapter 11 Professionals, will have or incur any liability to any Holder of a Claim or Interest, or any other party-in-interest,

31

Person or Entity or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates or any of their successors or assigns, for any act or omission occurring after the Petition Date and in connection with, relating to, or arising out of the Chapter 11 Case, formulation, negotiation or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan except for their bad faith, willful malfeasance, reckless disregard of duty, gross negligence, willful fraud, willful misconduct, self-dealing or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court.

**D.      Revesting of Property in the Debtor**

Except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtor.

**E.      Modification of Plan**

The Debtor may modify the Plan at any time before Confirmation.  However, the Court may require a new disclosure statement or re-voting on the Plan if the Debtor modifies the Plan before Confirmation. The Debtor may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

**F.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the office of the United States trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

**VI.**

**MISCELLANEOUS PROVISIONS**

2524356-08

Certain additional miscellaneous information regarding the Plan and the Chapter 11 Case is set forth below.

**A.      Settlement of Claims and Controversies**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of claims or controversies relating to the contractual and legal rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such an Allowed Claim.

**B.      Extensions of Time**

For cause shown, any deadlines herein which are applicable to the Debtor and which are not otherwise extendable, may be extended by the Bankruptcy Court.

**C.      Closing the Case**

At such time as the Chapter 11 Case has been fully administered, the Debtor will file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable, Order of the Bankruptcy Court to close the Chapter 11 Case of G&S Livingston Realty, Inc.

**D.      Revocation of Plan**

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Effective Date and to file subsequent plans of reorganization.  If the Plan is withdrawn or revoked, or if confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor or any

other person, (ii) prejudice in any manner the Debtor's or any other Person's rights, or (iii) constitute the Debtor's or any other Person's admission of any sort.

## E.    Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

## F.    Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained in the Plan, nor the Plan Proponent's taking of any action with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any of the Debtor's rights with respect to the Holders of Claims prior to the Effective Date.

## G.    Severability

The provisions of the Plan shall not be severable unless the Plan Proponent agrees to such severance and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

## H.    Conflicts

To the extent any provision of the Plan, Disclosure Statement, or any document executed by the Debtor in connection therewith or any documents executed by the Debtor in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the

Secured Creditor Settlement Agreement, the terms and provisions of the RSA shall govern and control.

**I.      Entire Agreement**

The Plan, and any supplements or amendments hereto, supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects (other than the Liquidating Trust Agreement), all of which have become merged and integrated into the Plan.

**J.      Governing Law**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of such jurisdiction.

**K.      Rules of Interpretation**

For purposes herein: (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed, or to be filed, means such document or exhibit, as it may have been or may be amended, modified or supplemented from time to time; (c) unless otherwise specified, all references herein to articles and sections are references to articles and sections of this Plan; (d) the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to articles and sections are inserted for convenience of reference only and are not

2524356-08

intended to be a part of or to affect the interpretation hereof; (f) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (g) all exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when filed with the Bankruptcy Court; (h) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (i) whenever a distribution of property is required to be made on a particular date, the distribution shall be made on such date, or as soon as practicable thereafter.

### L.      Setoff and Recoupment Rights Preserved

The Debtor and/or the Disbursing Agent may exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before distribution is made or account of such Claim), the claims, rights and causes of action of any nature that the Debtor may hold against the holder of such Allowed Claim.


G & S Livingston Realty, Inc.
a New Jersey corporation


By:   /s/ *Gregg Wasser*
Name: Gregg Wasser
Title:   President


Dated: July 1, 2011